UNITED STATES DISTRICT COURT　　　　　　ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X

QUASHON MILLER,

       *Petitioner,*

    - against -　　　　　　　　　　　MEMORANDUM AND ORDER

       　　　　　　　　　　10-CV-2174 (JG)

HAROLD GRAHAM,

       *Respondent.*
----------------------------------------------------------------- X

A P P E A R A N C E S:

  QUASHON MILLER
    #05-A-1133
    Auburn Correctional Facility
    P.O. Box 618
    Auburn, New York 13024
    *Petitioner, pro se*

  CHARLES J. HYNES
    Kings County District Attorney
    350 Jay Street
    Brooklyn, New York 11201
  By: Judith C. Aarons
    *Attorney for Respondent*

JOHN GLEESON, United States District Judge:

  Quashon Miller petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Miller challenges his November 2004 conviction in New York State Supreme Court, Kings County, of one count of murder in the second degree. Appearing *pro se*, Miller seeks habeas relief on the ground that he was denied effective assistance of counsel in the proceedings leading up to his guilty plea. Oral argument was heard on November 18, 2010, at which Miller appeared via videoconference from his place of incarceration. For the reasons stated below, Miller's petition is denied.

BACKGROUND

A. *The Offense Conduct*

On the morning of June 4, 2003, Miller was in the Brooklyn apartment of Arthur Jones, the victim in this case. Jones attacked Miller, stabbing him in the face with a knife. Miller left the apartment and went to the hospital, where he received stitches in his face. *See* Tr. at 13-14.[1]

On his way home from the hospital that evening, Miller decided to return to Jones's apartment to pick up his belongings and give Jones "his money." *Id.* at 15. On this visit to Jones's apartment, Miller carried with him an automatic handgun, which he had procured from "a guy around my way." *Id.* Soon after Miller arrived at Jones's apartment and Jones opened the door, Miller shot Jones in the head "once or twice." *Id.* at 25. Jones died as a result of his gunshot wounds. *Id.* at 24.

B. *Procedural History*

1. *The Guilty Plea*

Miller subsequently was charged with two counts of murder in the second degree, N.Y. Penal Law § 125.25(1), (2), one count of criminal possession of a weapon in the second degree, *id.* § 265.03(2),[2] and one count of criminal possession of a weapon in the third degree, *id.* § 265.02(4)[3]. On November 7, 2004, one day prior to Miller's plea hearing, Ivan Vogel, Miller's trial counsel, and the prosecutor discussed a possible plea agreement in which Miller would plead guilty to manslaughter in the first degree, carrying a determinate sentence of 20 years' incarceration. However, at the plea hearing on November 8, 2004 before Justice Albert

---

[1] Citations to the transcript of the plea proceedings are preceded by "Tr."
[2] New York Penal Law § 265.03 was amended in 2005, moving what was formerly listed in § 265.03(2) to § 265.03(1)(b).
[3] This subdivision of New York Penal Law § 265.02 was repealed in 2006.

2

Tomei of the New York State Supreme Court, Kings County, the prosecutor told the court that, after speaking with the victim's family, he no longer was prepared to offer the plea agreement discussed the day before. Instead, the prosecutor offered Miller a plea to murder in the second degree with an indeterminate sentence of 15 years to life in prison.

The court proceeded with Miller's plea allocution but halted the proceedings several times in light of: (1) Miller's indicating that he had not had enough time to speak to his counsel about the new plea, *see* Tr. at 3, 6; (2) his statement that he was only "[a] little bit" satisfied with counsel's representation, *id.* at 8; (3) his statement that he was not giving up his right to appeal voluntarily and of his own free will, *id.* at 10; and (4) his allusion to a justification defense, *i.e.*, that he had shot Jones in self-defense, *id.* at 16; *see id.* at 16-19. With respect to the justification defense, Miller stated that when Jones opened the door on the evening of June 4, 2003, Jones "cut" him and, "when I tried to run away, he tried to cut me again. That's when I shot him." *Id.* at 16. Justice Tomei then told Miller, "[i]t seems to me you have a viable defense of justification if he attacked you with a knife," and urged Miller to go to trial. *Id.* Miller stated in response that "I don't think I have a defense because I already know too much about the law," and reiterated his desire to plead guilty. *Id.* Moments later, Justice Tomei repeated his sentiments regarding the justification defense and the advisability of trial. *Id.* at 18. He then decided to adjourn the hearing until after the lunch hour "to give the defendant an opportunity to speak to his attorney." *Id.* at 20.

When the allocution resumed at 2:00 PM, Miller indicated that he wished to plead guilty to the second-degree murder count. In stating what happened on the evening of June 4, 2003, he omitted any reference to Jones's having attacked him with a knife before he shot Jones. *See id.* at 24-25. Miller told the court that he "shot [Jones] . . . [i]n the neck or face. . . . [o]nce or

3

twice" with the intent to kill him. *Id.* at 25. The court accepted Miller's guilty plea, which included a waiver of his right to appeal and any defenses.

    2.    *The Motion To Withdraw the Guilty Plea and Sentencing*

At sentencing on February 8, 2005, the court addressed Miller's motion to withdraw his guilty plea, which Miller had filed on December 1, 2004. *See* S. at 2.[4] In the motion, Miller claimed that he had been coerced into pleading guilty and stated that he "was coerced during plea to say false statements and was not aware of the time he plea too [sic]." Ex. A to Graham Br., at 15. The court denied the motion, stating that "[t]he defendant was given ample time, more than ample time to discuss with his attorney, whether he was going to take this plea or not." *Id.* The court elaborated that it had adjourned the plea proceedings until 2:00 PM, at which time the defendant stated that he wanted to plead guilty. *Id.* at 3. Explaining its reasons for having adjourned the plea proceeding, the court recounted:

> at the time we were attempting an allocution or he was attempting to give an allocution of this crime, and he made a statement that, to this Court, raised the defense of the justification, and I brought that to his attention, and I brought that to the attorney's attention, and in fact the defendant said he knew the law, and that he had no defense, and as I said, the matter was put off to the afternoon session so he'd have more time to speak to his attorney about it. . . . I gave him ample time to speak to his parents. . . . So, it's the Court's opinion that this plea should stand and defendant should be sentenced.

*Id.* Miller protested that his attorney told him to take the plea and that he "had insufficient counsel," in part because he did not have a good understanding of the case and counsel failed to give him "all my paper work," but the court repeated that "the motion is denied." *Id.* at 4-5. Towards the end of the proceeding, Miller reiterated a final time: "I was coerced to say it. I did not shoot him but, that's what in my statement self-defense . . . ." *Id.* at 14. The court then imposed a sentence of 15 years to life in prison. *Id.*

---

    [4]    Citations to the sentencing transcript are preceded by "S."

4

3.  *The Direct Appeal*

Lynn W.L. Fahey, Miller's appellate counsel, filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), on June 27, 2007 seeking permission to withdraw as Miller's counsel and stating that she had determined that she could not present any non-frivolous issues on appeal. She also noted that it could not be argued that Miller's sentence was excessive, as New York Penal Law provides for a 15-year minimum sentence for class A-1 felony convictions. *See* N.Y. Penal Law §§ 70.00(3)(a)(i) & 125.25. Barry Stendig, an associate of Fahey, sent Miller a letter in June 2007 informing him that he could file a *pro se* supplemental brief for the purpose of an appeal, and Miller did so on March 26, 2008.

In his supplemental brief, Miller argued that his trial counsel had been ineffective in failing to: (1) pursue a justification defense; (2) investigate and become familiar with the facts of Miller's case, including "the injury's reports from hospital records and confession that lead to a defense of justification," Ex. C to Graham Br., at 14; and (3) advise Miller as to the possibility of a justification defense. Miller claimed that as a result of this ineffective assistance of counsel, he involuntarily pled guilty.[5] *See id.* at 11.

On November 18, 2008, the Appellate Division, Second Department, affirmed the Supreme Court's judgment of conviction. *People v. Miller,* 867 N.Y.S.2d 344 (2d Dep't 2008). The Appellate Division stated its "agree[ment] with the defendant's assigned counsel that there are no nonfrivolous issues which could be raised on appeal," granted Fahey's application for leave to withdraw as counsel, and opined that "[t]he defendant has not, nor could he have, raised any nonfrivolous issues in his supplemental pro se brief." *Id.* at 344. Miller then applied for

---

[5]  As an additional ground for vacating his conviction, Miller raised his counsel's conflict of interest in connection with the motion to withdraw the guilty plea. *See* Ex. C to Graham Br., at 17. As Miller does not make this argument in his habeas petition, I do not review it here.

5

permission to appeal from this decision, but a judge of the Court of Appeals denied his application on March 19, 2009. *People v. Miller*, 12 N.Y.3d 785 (2009) (Pigott, J.).

    4.    *The Motion To Vacate the Judgment*

While his direct appeal was pending, Miller moved *pro se* on March 11, 2008 to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. Miller contended in his motion that he did not enter a knowing, intelligent and voluntary plea to murder in the second degree as a result of ineffective assistance of counsel. Ex. E to Graham Br., at 2. The claimed ineffective assistance consisted of counsel's failure to explain to Miller the possibility of a justification defense prior to entry of Miller's guilty plea, and counsel's failure to adequately investigate the viability of a justification defense. Specifically, Miller argued that if counsel had "done the minimum amount of investigation, he would have discovered an abundant [sic] of evidence, showing that defendant was not the aggressor," including "the video tape confession, the statement defendant made the day of his arrest, hospital records showing defendant was treated twice that day for abrasion and puncture wounds to the face and live testimony from defendant." *Id.* at 7.

On September 2, 2008, Justice Tomei denied Miller's § 440 motion in a written opinion. The court held that Miller's claim that his counsel failed to both investigate a potential justification defense and advise Miller about it during the break in the plea proceedings was barred pursuant to § 440.10(3)(a) because he could have, but did not, raise this record-based claim at the plea or sentencing proceedings or in his motion to withdraw his guilty plea. *See* Ex. G to Graham Br., at 2. The court also noted that this ineffective assistance claim was belied by the record, given that Miller had been allowed one and one-half hours to discuss the matter with his attorney and his family, he in fact took that time to do so, and he stated that he was satisfied

with his counsel's representation and wished to forego the justification defense. The court further held pursuant to § 440.30(4)(d)[6] that there was no possibility that counsel had failed to investigate the justification defense because it was "based solely upon the defendant's testimony and the medical records of his injuries." *Id.* at 3. Lastly, the court noted that, in light of Miller's admission to returning to Jones's apartment "armed with a gun after [Miller] had been wounded by [Jones] with a knife in an altercation earlier that same day, it cannot be said that counsel was ineffective for advising the defendant to forego the justification defense and plead guilty in exchange for the minimum legal sentence." *Id.*

On February 13, 2009, the Appellate Division denied Miller leave to appeal from the order denying his § 440 Motion.

5. *The Instant Petition*

Miller filed this petition on May 10, 2010, claiming that he is entitled to a writ of habeas corpus under 28 U.S.C. § 2254 due to his trial counsel's constitutionally ineffective assistance, which manifested itself in: (1) counsel's failure to investigate the facts and circumstances of a viable justification defense; and (2) counsel's advising Miller that he had no defense and that it was in his best interest to plead guilty, which Miller proceeded to do involuntarily.

DISCUSSION

A. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). Under the AEDPA standard, the

---

[6] The court mistakenly cited New York Criminal Procedure Law § 440.30(3)(d) – which does not exist – for this principle.

7

reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*[7]

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist*, 260 F.3d at 93 (quoting *Williams*, 529 U.S. at 411). Interpreting *Williams,* the Second Circuit has

---

[7] This limitation on relief is referred to as "AEDPA deference." *E.g.*, *Jimenez v. Walker*, 458 F.3d 130, 135 & n.2 (2d Cir. 2006).

8

added that although "'[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Id.* at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision. *See Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

In addition to the deference owed to state court determinations of fact under § 2254(d), subsection (e) requires that a federal habeas court presume all state court factual determinations to be correct. The petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

B.  *Miller's Claims of Ineffective Assistance of Counsel*

In order to establish that his counsel was ineffective, Miller must prove that: (1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's error, the outcome of the plea process would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687-94 (1984). In the context of a guilty plea, the second or "prejudice" prong of the *Strickland* test is satisfied upon a showing by the defendant "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In addition, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.*

9

1.      *Failure To Investigate Facts Supporting Potential Justification Defense*

Miller first argues that his trial counsel's failure to investigate the facts supporting a potential justification defense, along with counsel's failure to advise Miller as to such a defense, amounted to ineffective assistance of counsel. I disagree.

New York law permits a person, under certain conditions, to use physical force upon another person when and to the extent he reasonably believes such force to be necessary to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force by the other person. N.Y. Penal Law § 35.15(1). This justification defense is not available, however, where the other person's conduct "was provoked by the actor with intent to cause physical injury to another person," or the actor was the "initial aggressor" and did not subsequently withdraw from the encounter and effectively communicate such withdrawal to the other person. *Id.* § 35.15(1)(a), (b). Where the person seeking to invoke the defense uses deadly force, his conduct is not justified unless he "reasonably believes that [the] other person is using or about to use deadly physical force." *Id.* § 35.15(2). Even in that case, however, "the actor may not use deadly physical force if he . . . knows that with complete personal safety, to oneself and others he . . . may avoid the necessity of so doing by retreating." *Id.*

Miller claims that despite the court's suggestion to him at the plea hearing that he might have a viable justification defense and its adjournment of the hearing in order to provide him with additional time to consult with his attorney, counsel "stood idle, and failed to investigate the facts and particulars of the case and evidence" surrounding a potential justification defense. Pet. at 7. As Miller argued in his supplemental brief on direct appeal, counsel's deficiencies included failing to investigate Miller's "video and written statement

10

confession," along with the medical records[8] from "both hospitals [Miller] was treated at for his injuries." *Id.* at 32-33. At oral argument, Miller added to this list Jones's autopsy report and evidence revealing marks on Jones's hands. Miller contends that if counsel had properly investigated this evidence, analyzed the viability of a justification defense and advised Miller as to such a defense, Miller would have "exercise[d] his right to proceed to trial." *Id.* at 7.

> As the Supreme Court stated in *Hill v. Lockhart*,
>
> where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.

474 U.S. at 59. Miller contends that an investigation of the evidence listed above would have revealed the availability of a justification defense. In order to establish his entitlement to the defense, Miller would have needed to demonstrate that: (1) he did not provoke Jones with intent to cause physical injury to him; (2) Miller was not the initial aggressor, or, if he was, he withdrew from the encounter and effectively communicated such withdrawal to Jones; (3) Miller reasonably believed that Jones was using or was about to use deadly physical force on him; and (4) Miller did not know that he could retreat with complete personal safety. *See* N.Y. Penal Law § 35.15.

Miller claimed early in the plea proceeding and in his state court submissions that Jones was the initial aggressor and stabbed him in his face as soon as Jones opened the door the evening of June 4, 2003. *See* Tr. at 15-16; Ex. E to Graham Br., at 5. At oral argument, Miller also argued that Jones's autopsy report, which suggested that the bullet that entered Jones's head had an upward trajectory, and the evidence revealing marks on Jones's hands, was consistent

---

[8] Miller claims in his petition that these medical records were not provided to counsel, *see* Pet. at 33, but this assertion is contradicted by Miller's earlier statement in his reply brief in support of his § 440 motion that the records were "disclose[d] via discovery," *id.* at 66.

11

with a struggle between Miller and Jones immediately before the shooting. He fails to identify any statements in his confessions reflecting that he did not provoke Jones or that he knew he lacked the ability to retreat safely.

I am not persuaded that further investigation was necessary or would have changed either counsel's recommendation that Miller plead guilty or Miller's own decision to plead guilty. Counsel's position on the justification defense necessarily would have turned on his projection as to whether the defense would succeed at trial. *See Hill*, 474 U.S. at 59. Although at the plea proceeding Miller first relayed a version of the facts suggesting that Jones attacked him as soon as he opened the door and that Miller feared for his life, this story changed considerably over the course of the plea allocution, the appeal and the § 440 proceedings,[9] and Miller even admitted at the plea proceeding that he had procured a loaded gun from an acquaintance before returning to Jones's apartment. Counsel no doubt decided that a jury would be skeptical of Miller's self-defense narrative. He might have further concluded that even if Miller persuaded the jury that Jones was the aggressor, it would nevertheless have convicted Miller on the ground that he had a duty to retreat before using deadly force and knew he could do so with complete safety. Finally, the fact that the bullet that killed Jones had an upward trajectory is not inconsistent with the prosecution's version of events.

As *Strickland* requires, I "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and therefore presume that Miller's counsel reviewed in full the evidence Miller cites in his petition and decided that it did

---

[9] The version of the facts contained in Miller's § 440 motion is implausible, to put it mildly. According to that version, (1) Jones stabbed Miller in the face immediately after opening the door for him on the night of June 4, 2003; (2) Miller then "tried to retreat back out of the door;" (3) at that very moment, "Mr. Jones started to reach in his wait [sic] band and pull out a gun;" (4) a "struggle" then ensued "for the gun and the weapon goes off and falls to the floor;" (5) Jones "continued to come at me and at the same time try to retrieve the weapon from the floor;" and (6) only then, in a "pani[c]," Miller "grabbed the weapon and fled from the building." Ex. E to Graham Br., at 5. This account of events is starkly contradicted by Miller's statement at his plea allocution that he "went to Arthur's house with a weapon, with a gun to shoot him." Tr. at 24.

12

not support a successful justification defense. *Strickland*, 466 U.S. at 689. Thus, I cannot conclude that counsel's strategic decision to forego a justification defense and recommend that Miller plead guilty was unreasonable. I also conclude that Miller's justification defense likely would not have succeeded at trial, *see Hill*, 474 U.S. at 59-60, and thus Miller has failed to establish "prejudice" under *Strickland* on this ineffective assistance of counsel claim. Accordingly, I find Miller's ineffective assistance of counsel claim regarding the justification defense to be without merit.[10]

    2.    *Coercion of Miller To Plead Guilty*

Miller further contends that he did not knowingly, intelligently and voluntarily plead guilty because his counsel coerced him to accept the prosecutor's plea offer. He alleges that during the break between the morning and afternoon sessions of the plea proceedings, his counsel advised him and his mother that he had no defense to the second-degree murder charge and that accepting the plea offer was in his best interest. He also claims that counsel failed to advise him as to the possibility of asserting a justification defense, while instructing him as to what to tell the court so it would accept his guilty plea.

As the Supreme Court stated in *Hill v. Lockhart*, the test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56 (quotation marks omitted). The record of the plea proceeding reflects that Miller expressed early on that he had not had adequate time to consult with his attorney, and that while Jones had stabbed him again before Miller shot him, Miller "knew too much about the law" to be interested in asserting a justification defense at trial. The court suggested to Miller that he might have a viable

---

[10] I do not need to address what appears to be a persuasive argument that this claim was procedurally defaulted because I find that the claim has no merit.

13

justification defense and provided him with over an hour to consult with his attorney and parents about proceeding with the guilty plea. After the break, Miller stated that: (1) he wished to plead guilty to the charge of second-degree murder; (2) he had had sufficient time to discuss the plea offer with his attorney; (3) he was satisfied with the services rendered by his attorney; (4) no one had forced or coerced him to plead guilty; and (5) he did so voluntarily and of his own "[f]ree will." Tr. at 20-22. Miller was forthright with the court prior to the break in the proceedings and I have no reason to doubt he would have told the court after the break if he felt constrained or coerced by his attorney to plead guilty. Moreover, Miller stood to receive a sentence of a maximum of 25 years to life in prison if he had been convicted of second-degree murder after a trial. In light of these facts, I find that Miller's decision to accept the offer of 15 years to life – the statutory minimum under New York Penal Law § 70.00(3)(a)(i) – was a voluntary and intelligent choice among the alternative courses of action open to him. Because Miller has not asserted facts supporting his claim that his counsel was constitutionally ineffective in encouraging him to plead guilty, I find that the Appellate Division's decision rejecting this ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of federal law.

## CONCLUSION

For the foregoing reasons, the petition is denied. As Miller has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So Ordered.

John Gleeson, U.S.D.J.

Date: December 6, 2010
Brooklyn, New York